# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JAMES A. MORRISON,

                      District Judge Thomas M. Rose
                      Magistrate Judge Michael R. Merz

        Plaintiff,      :

  -vs-                              Case No. 3:09-cv-009

OFFICER MARTIN K. GREENWALD,
   et al.,

        Defendants,    :

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action *pro se* against Martin K. Greenwald, Marshall T. Howard, and George J. Kloos, corrections officers at the Montgomery County Jail, over an incident which occurred at the Jail on January 23, 2008. The case is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 33), Plaintiff's Motion in Opposition (Doc. No. 40) which seeks summary judgment in Plaintiff's favor, and Defendants' Reply Memorandum (Doc. No. 41). Thus the case is pending on cross-motions for summary judgment, although neither side admits the facts as stated by the other side.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On

1

a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id*. The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F.2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F.3d 795 (6th

Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Alexander v. Caresource,* 576 F.3d 551 (6th Cir. Ohio 2009), citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F.2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories,

and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## Law Applicable to § 1983 Claims

Plaintiff stated no theory of recovery in his Complaint, but supplemented it in response to Defendants' Motion to Dismiss to assert that he was denied his Eighth Amendment right against cruel and unusual punishment by the Defendants' actions. On that basis, the Magistrate Judge recommended that the Motion to Dismiss for lack of jurisdiction be denied and District Judge Rose adopted that Report (Doc. Nos. 12, 15).

Because Plaintiff seeks redress for asserted violations of his constitutional rights, the Magistrate Judge analyzes the case as brought under 42 U.S.C. § 1983. That statute, R.S. §1979, was adopted as part of the Act of April 20, 1871, and reads, as amended:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress , except that in any action brought against a judicial officer, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The statute creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999); *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986); *Carey v. Piphus,* 435 U.S. 247,

98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 504 U.S. 158, 1125 S. Ct. 1827, 118 L. Ed. 2d 504 (1992). In order to be granted relief, a plaintiff must establish that the defendant deprived him of a right secured by the U.S. Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981); *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 155, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978).

All three Defendants admit that they were public officials acting under color of state law with respect to the incident in suit, but claim they are entitled to qualified immunity. Government officials performing discretionary functions are afforded a qualified immunity under 42 U.S.C. §1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir., 1994); *Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994). The question is not the subjective good or bad faith of the public official, but the "objective legal reasonableness" of his or her action in light of clearly established law at the time the official acted. *Anderson v. Creighton*, 483, U.S. 635 (1987).

Qualified immunity analysis involves three inquiries: (I) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted*

*Falls*, 395 F.3d 291, 302 (6th Cir. 2005), *quoting Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). Qualified immunity must be granted if the plaintiff cannot establish each of these elements. *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004).

In order for the violated right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right; in light of pre-existing law, the unlawfulness of the official's action must be apparent. *Anderson v. Creighton*, 483 U.S. at 640. The right must be defined at the appropriate level of specificity to determine whether it was clearly established at the time the defendants acted. *Wilson v. Layne*, 526 U.S. 603, 615 (1999), citing *Anderson v. Creighton.* The test is whether the law was clear in relation to the specific facts confronting the public official when he acted; the constitutional right must not be characterized too broadly without considering the specific facts of the case. *Guercio v. Brody*, 911 F.2d 1179 (6th Cir. 1990). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir. 1992). Although the very action in question need not have previously been held unlawful, its unlawfulness must be apparent in light of pre-existing law. *Id.* An action's unlawfulness can be apparent from direct holdings, specific examples described as prohibited, or from the general reasoning that a court employs. *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002), citing *Hope v. Pelzer,* 536 U.S. 730 (2002).

In deciding qualified immunity questions, district courts were for some years required to apply a two-part sequential analysis, first determining whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right, and then deciding if the right was clearly established at the time the officer acted. *Brosseau v. Haugen*, 543 U.S. 194 (2004), *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310-11 (6th Cir. 2005), and *Klein v. Long,* 275 F.3d 544 (6th Cir. 2001), *both citing Saucier v. Katz*,

533 U.S. 194, 201 (2001). However, the two-step process is no longer mandated in light of experience with its use; trial judges are now permitted to use their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 556 U.S. ___, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

When a qualified immunity defense is presented on motion for summary judgment, the court must determine the circumstances with which defendants were confronted and the information they possessed. To make this determination, the Court must consider all the undisputed evidence produced in discovery, read in the light most favorable to the plaintiff. *Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir. 1988), following *Green v. Carlson*, 826 F.2d 647, 650-52 (7th Cir. 1987). Application of the doctrine of qualified immunity to a particular defendant is a question of law. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). To overcome a defendant's motion for summary judgment based on qualified immunity, the plaintiff must: (1) identify a clearly established right alleged to have been violated; and (2) establish that a reasonable officer in the defendant's position would have known that the conduct at issue was undertaken in violation of that right. *Mays v. City of Dayton*, 134 F.3d 809 (6th Cir. 1998), citing *Pray v. Sandusky,* 49 F.3d 1154, 1158 (6th Cir. 1995). If the court finds no valid claim pursuant to 42 U.S.C. §1983, the court need not reach the issue of qualified immunity. *Carlson v. Conklin,* 813 F.2d 769 (6th Cir. 1987).

When the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability. *Sova v. Mt. Pleasant*, 142 F.3d 898 (6th Cir. 1998); *Buckner v. Kilgore*, 36 F.3d 536 (6th Cir. 1994); *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994); *Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir., 1993); *Washington v. Newsom,* 977 F.2d 991 (6th Cir. 1992); *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir. 1991).

## Evidence Submitted by the Parties

Affidavits submitted on a motion for summary judgment must be made on personal knowledge and demonstrate that the witness would be competent to testify to the facts which are included. Fed. R. Civ. P. 56(e). Once a summary judgment motion is made and supported by evidence which satisfies Rule 56(e), the opposing party cannot rest on its pleadings, but must submit opposing evidence of similar quality.

Defendants' Motion is supported by the Affidavits of Defendants and of other jail officers who were eyewitnesses to parts of the incidents in question. Defendant Kloos avers that at about 1:30 A.M. on January 23, 2008, he was called to assist Defendant Howard in re-celling two inmates who, he was told, were being moved for bullying other inmates (Kloos Affidavit, Ex. D to Doc. No. 33, ¶ 3). Both inmates complied with his order to pack their belongings, but Plaintiff commented that the re-celling was "bullshit" and the snitch who was responsible was on Plaintiff's "hit list." *Id.* at ¶ 4. When they reached the area in front of the elevators,

> Plaintiff asked me where he was being relocated, to which I responded that he was going to the west wing on the fourth floor. Plaintiff then stated, "If that's a roll over I'm not going. I will beat a cop's ass." Plaintiff then requested to talk to a supervisor.

*Id.* at ¶ 7.

Officer Kloos avers that the Montgomery County Jail has video cameras which record events from fixed positions. *Id.* at ¶ 5. He further avers that the file 08-129.dvr (Exhibit C to Doc. No. 33) accurately depicts the events shown therein. *Id.* Officer Kloos continues:

> I am shown backing away from the Plaintiff at 1:22:28. Plaintiff is shown lunging toward me as if about ready to strike me at time marker 1:22:34. Plaintiff then takes a bladed stance, which indicated to me that an assault was eminent [sic]. I then pushed Plaintiff away from me to create some distance. At that point, Plaintiff initiated his assault by striking me in the face as is shown on the video at 1:22:45.

*Id.* , ¶ 8. The Affidavit accurately describes what is shown by the video recording. As the struggle continued, the combatants moved out of camera range and a number of additional officers arrived

on the floor. Officer Kloos avers that after Plaintiff had been struck several times in the head with the officer's radio, "he finally ceased fighting, stating 'I'm done. I did what I wanted to do.'" Officer Kloos states Defendant Greenwald did not strike Plaintiff or stand on his head. *Id.* at ¶ 13. Several other officers took Plaintiff into the elevator. *Id.* at ¶ 14.

Plaintiff also complains of an incident on April 23, 2008, when he says Officer Kloos spit into his cereal when delivering his breakfast tray. Officer Kloos admits he delivered a breakfast tray to Plaintiff on that date and that there appeared to be spittle on the uneaten cereal when he picked the tray up, but swears he did not spit in the food. *Id.* at ¶¶ 16-19.

Corrections Officer Howard also filed an Affidavit in support of Defendants' Motion (Howard Affidavit, Ex. E to Doc. No. 33). He corroborates Officer Kloos' Affidavit in all particulars, including that he did not get on the elevator with Plaintiff and Plaintiff's statement that he had achieved his intended purpose when he stopped fighting. *Id.*

Corrections Officer and Defendant Martin Greenwald also filed an Affidavit in support of Defendants' Motion (Greenwald Affidavit, Ex. F to Doc. No. 33). He avers that Mr. Morrison had already been handcuffed when he arrived on the third floor. *Id.* at ¶ 4. He and Corrections Officer Leggett went into the elevator with Plaintiff, along with Sergeant Whalen and Corrections Officer Brent Parrish. *Id.* at ¶ 5. He denies that he ever hit, kicked, or otherwise harmed Plaintiff. *Id.* at ¶ 6.

Sergeant Richard Whalen also filed an Affidavit in support of Defendants' Motion (Whalen Affidavit, Ex. G to Doc. No. 33). When he arrived on the third floor, Morrison, Kloos, and Howard were on the floor and Morrison was handcuffed. *Id.* at ¶ 4. Greenwald was "constantly in my presence and neither he, nor any of the other officers, delivered any blows or physically assaulted the Plaintiff while the Plaintiff was in my presence. Mr. Morrison did not tell me that Greenwald had assaulted him." *Id.* He verifies the accuracy of the video file and that he, Greenwald, Parrish,

and Leggett are the officers who went into the elevator with Morrison. *Id.* at ¶ 14.

Corrections Officer Leggett confirms Morrison was in handcuffs when he arrived on the third floor, no officer harmed Morrison in his presence, and he was on the elevator with Morrison, Whalen, Parrish and Greenwald. (Leggett Affidavit, Ex. H to Doc. No. 33). Corrections Officer Parrish confirms these facts, including that no force was used against Morrison in the elevator. (Parrish Affidavit, Ex. I to Doc. No. 33).

With his response to Defendants' Motion, Plaintiff submits the sworn interrogatory answers of Defendants Kloos, Howard, and Greenwald (Doc. No. 40, Ex. 3) and a transcript of the testimony of Defendants Kloos and Howard at the preliminary hearing in Dayton Municipal Court on the felony assault charges against Plaintiff which resulted from this incident. *Id.* Ex. 2. At the conclusion of the preliminary hearing, Acting Dayton Municipal Judge William James Owen finds probable cause to believe Plaintiff assaulted both Kloos and Howard and orders him bound over to the grand jury. Plaintiff also submits several photographs which show him bleeding from the head, his swollen left index finger, and an eventual splint on that finger, along with two photographs of police radios. (Exhibits A-D to Doc. No. 40).

Plaintiff also submits several documents which he identifies as being from the Montgomery County Jail:

1. Sergeant C.S. Williams Incident Report who advises that when he arrived Morrison was already handcuffed and yelling "Fuck you guys, I ain't did shit. I wasn't going to move for you, that's all."

2. Officer Greenwald's Incident Report where he indicates Morrison was in handcuffs when he arrived and he denies any use of force during the incident.

3. Officer Kloos' Incident Report in which he records Morrison's initial refusal to be moved and threat to "beat a cop's ass" if he was being transferred to a "rollover" cell and

Morrison's eventual statement of satisfaction with what he had accomplished with the fight.

4. Morrison's grievance form regarding this incident, not filed until three months later on April 21, 2008.

5. Morrison's grievance form in which he initially accused Corrections Officer Howard, not Kloos, of spitting in his food.

(Doc. No. 40, Attachment 4.)

Finally, in support of his own position on the two Motions, Plaintiff submitted a "Motion in Opposition" (Doc. No. 40). Instead of a separate affidavit, Mr. Morrison verifies the Motion, stating "Plaintiff herein above affidavit declare under the penalty of perjury that the preceding statement [the entire Motion] is true and correct." *Id.* at 10. Although Fed. R. Civ. P. 56(e) does not expressly permit unsworn declarations, the Court finds that the form of Plaintiff's declaration sufficiently complies with 28 U.S.C. § 1746 to be considered as if it were an affidavit, to the extent only that it purports to state facts which Plaintiff would be personally competent to testify to.

Extracting Plaintiff's description of relevant facts from his argument, he avers that Officer Kloos attacked him in front of the elevators, without any provocation. (Doc. No. 40 at 3). Officers Kloos and Howard struck him with their fists and radios. They "easily overcame him," brought him to the floor, and handcuffed him. *Id.* Officer Greenwald arrived, began hitting him repeatedly in the face, and "at one point put his foot onto the head of the plaintiff while grinding his face into the floor. *Id.* Greenwald threatened what he would do to Morrison in the elevator and then proceeded in the elevator to

> slam plaintiff's head into the wall of the elevator wall, splitting the skin on the plaintiff's forehead and later requiring sutures to close the wounds. Defendant Greenwald proceeded to grasp the plaintiff's finger, bending so as to break it all the while saying "How do you like that, mother fucker?"

*Id.* Plaintiff claims that he required medical treatment as a result of what happened. *Id.* at 4. He

11

says he was put "in a cell with a leaking ceiling that flooded in winter, and was refused a blanket to stay warm, or a mat to lie upon." *Id.* He states that Officer Kloos spit in his breakfast tray on April 23, 2008. *Id.* He claims Kloos and Howard were in the elevator and did nothing to stop Greenwald from assaulting him. *Id.*

Plaintiff admits that he was upset about being moved and questioning why it was happening without a hearing, without witness testimony, or without the chance to present evidence or face his accuser. *Id.* at 6. He claims he responded to Officer Kloos' attack by defending himself. *Id.* He points out that the Defendants Kloos and Howard admit hitting him with their radios. As to what happened in the elevator, Plaintiff says:

> From the very onset of the plaintiffs' claim of the defendants statements in regard to the force used by all of the Officers involved on the elevator it is very very apparent that the use of unnessary force was used on plaintiff. Defendant Greenwald, was in charge of the plaintiff on the elevator, and therfore is responsible for the plaintiff for the duration • Defendant made several remarks as to what was about to transpire in the elevator ride. "Just waite" he said, and kept his word for the plaintiff ended up with a broken finger, more cuts and lacerations than what were prevalent upstairs. The plaintiff should prevail on his claim of cruel and unusual punishment for the other officers that were there in the elevator also did nothing to stop the mis-treatment that had occurred right in front of their very eyes and they did nothing to stop the harm that was being done to the defendant.

*Id.* at 9.

## Analysis

As of January 23, 2008, when this incident happened, Plaintiff had been convicted of felonious assault and burglary but not yet sentenced. Defendants' Motion suggests Plaintiff should be classified at that point as a pre-trial detainee, but Plaintiff claims that he was no longer a pre-trial detainee because of the convictions. *Id.* at 8. The Court agrees with Plaintiff. Once a prisoner has

been convicted, he is no longer entitled to the presumption of innocence that goes with merely being a pretrial detainee. Rather at the point of this incident Plaintiff was a convicted felon awaiting sentence and conveyance to a state institution if that was to be the sentence (not unlikely on convictions of felonious assault and burglary).

Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Claus, the core judicial inquiry is that set out in *Whitley v. Albers,* 475 U.S. 312 (1986): whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian,* 503 U.S. 1(1992). In *Whitley* the Supreme Court held that infliction of a gunshot wound in quelling a riot is not a constitutional violation simply because in retrospect it may appear an error of judgment. Obduracy and wantonness, not inadvertence or error in good faith, are required for a violation of the Eighth Amendment.

Based on all the evidence, the Court concludes that neither Officer Kloos nor Officer Howard violated any clearly established constitutional right of Mr. Morrison in the use of force in restraining and handcuffing him on January 23, 2008. The Court relies on the following facts:

Mr. Morrison candidly admits he was upset about being moved. Indeed, he claims a due process right not to have his cell changed involuntarily without notice and a hearing which includes the right to confront those who accuse him of the facts on which the decision to move him was based. No such right exists. There is no property right under Ohio law protected by the Due Process Clause of the Fourteenth Amendment for a prisoner to continue to occupy a particular cell without notice and a hearing before he or she is moved.

Once Morrison found out the kind of cell he was being moved to, he was even more upset. Both Kloos and Howard swear and he does not deny he said he would "beat a cop's ass" over being

moved to a "rollover" cell and the video shows that is exactly what he proceeded to do[1]. Once the fight had proceeded for a time, Kloos and Howard swear and Morrison does not deny that he stopped fighting and said he had done what he intended to do. Both a municipal judge and the grand jury concluded there was probable cause to believe Morrison committed felonious assault on these two officers[2]. The force with which they responded was not excessive, cruel, or wanton infliction of pain, but rather necessary to regain control of Mr. Morrison. On the claim of use of excessive force in the initial restraint against Kloos and Howard, there are no issues of material fact and these officers are entitled to judgment as a matter of law.

Officers Howard and Kloos are also entitled to summary judgment on Mr. Morrison's claim that they should have intervened to prevent whatever violence occurred in the elevator. Kloos and Howard claim they were not on the elevator, and every other officer present corroborates that claim. Taken alone, those affidavits might not be enough for summary judgment on this claim, but the video record plainly shows Kloos and Howard did not get on the elevator with Morrison.

Defendants Greenwald, Kloos, and Howard are also entitled to summary judgment on Morrison's claim that he was celled in a cell that leaked and was not given a blanket. He has not produced any evidence that these three officers were in any way responsible for those conditions or that he ever complained to any one of them about those conditions.

Officer Kloos is also entitled to summary judgment on Morrison's claim that Kloos spit in his cereal on April 23, 2008. As to whether it happened, the Court is faced with a plain "he said -

---

[1] On the propriety of finding facts upon viewing a video record of an incident where constitutional violations are alleged, see *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[2] Morrison was not convicted of felonious assault out of this incident. Rather, he pled guilty to one count of witness intimidation on these facts in return for having the assault charges dismissed. (See Ex. b to Doc. No. 33). As noted above, he was already awaiting sentencing on a charges of felonious assault and burglary which arose in 2007; that was why he was in the Jail in the first place.

she said" situation. Because Plaintiff is competent to testify on this point and says it did happen, his averment must be accepted. Assuming, then, that the spitting did happen, it was a gross insult. But Plaintiff did not eat the cereal thus spoiled or contract any illness from it. The Constitution does not protect inmates (or anyone else) from gross insults by public officials, including prison guards. Furthermore, Plaintiff suffered no injury from the insult.

The claim of use of excessive force against Officer Greenwald, however, cannot be resolved on summary judgment. While it seems unlikely a jury will accept Mr. Morrison's account of events against that of all four eyewitnesses who says no force at all was used by Greenwald, that is a question of credibility which must be resolved by a jury.

Accordingly, it is respectfully recommended that Defendants' Motion for Summary Judgment be granted as to all claims except the excessive force claim against Officer Greenwald. It is further recommended that Plaintiff's request for summary judgment be denied.

February 24, 2010.

                                                         s/ **Michael R. Merz**
                                                         United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).